## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## AT CINCINNATI

| | | |
|---|---|---|
| **THE STANDARD FIRE INSURANCE** | : | |
| **COMPANY,** | : | **CASE NO.**1:15-cv-805 |
| | : | |
| Plaintiff | : | **JUDGE SUSAN J. DLOTT** |
| | : | |
| | : | |
| | : | . |
| -vs- | : | |
| | : | |
| **DAN ZEISLER,** | : | |
| Defendant | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT WITH AFFIDAVITS OF DAVID TIMPANI AND MATHEW
RAYMOND PAIS**

Now comes the Plaintiff, by counsel, and requests the court deny defendant's motion for

summary judgment for the reason that genuine issues of material fact upon which reasonable

minds could differ remain. The reasons for said response being more fully set out in the

affidavits of David Timpani and Mathew Raymond Pais appended hereto, the pleadings, the

depositions filed herein and being more fully set out in the within Memorandum.


**MEMORANDUM**

I.     **FACTS**

Plaintiff's insured Roy Smith is a boat owner who spends his winters in Florida and

leaves his Ohio-based Holiday Mansion houseboat docked at Four Seasons Marina during the

winter.[1] In order to facilitate his winter forays to Florida, Mr. Smith retains defendant Dan Zeisler to "winterize" his vessel.[2] The winterization process is intended to safeguard the vessel from freeze damage that would cause it to take in water and potentially sink while moored during the winter months. In Mr. Smith's case, he hired defendant Dan Zeisler, who had regularly maintained the boat on his behalf, to complete the winterization process in October 2013.[3] Upon completion of the winterization, Mr. Zeisler issued an invoice to Mr. Smith setting out the charges to "winterize boat". [4] In undertaking the winterization for Mr. Smith, Zeisler understood Mr. Smith was in Florida and would not be checking on his boat.[5] The Standard Fire policy insuring Mr. Smith's Holiday Mansion craft requires Mr. Smith to winterize the vessel if it remains in the water during winter months. [6] In this case, Mr. Smith, being unfamiliar with standards in winterization, hired Mr. Zeisler to carry out the function in accordance with his policy.[7]

Three months after Zeisler's winterization, on January 11, 2014 Roy Smith's Holiday Mansion craft submerged while moored to its Four Seasons Marina slip in Cincinnati Ohio.[8] The two-engine, 50-foot craft was insured by the plaintiff Standard Fire Insurance Company for a stated policy amount of $150,000.[9] Certified marine surveyor David Timpani conducted a post sinking investigation determining that the vessel submerged due to freezing in the air-conditioning supply lines which cracked the sight glass and allowed water to enter the hull

---

[1] Amended Compl. at para. 2.
[2] Matt Pais Depo. At p.64
[3] Added compl. at para. 7.
[4] Deposition Dan Zeisler at P 44, Exhibit 1.
[5] Id. at PP 94-95
[6] Deposition  Matt Pais  at P 71-72
[7] Deposition Roy Smith at P 48, 69.
[8] Id. at para. 7.
[9] Id at para. 12

through the open sea cocks. Mr. Timpani further found that draining the water supply lines and closing the sea cocks were necessary elements to proper winterization of the vessel. [10]

Standard Fire's adjuster Matt Pais determined that Roy Smith had hired the defendant Dan Zeisler to winterize his vessel so that it could remain in slip during the winter months 2013-2014. In connection with his investigation, Mr. Pais obtained a written statement from Defendant Zeisler setting out what he did for Mr. Smith in winterizing the Holiday Mansion craft. In particular, Mr. Zeisler provided the written statement addressed to Matt Pais stating as follows:

> This letter is in response to request for information concerning the **winterization of Roy Smith's boat**. As I stated to you earlier, Roy and I have been friends for many years. In regard to his boat, which he has owned for the past five or six years, there has been no issue of any kind **regarding the winterization of Roy's boat**.[11]

The Boat US Marine Insurance Winterizing Checklist, which Mr. Zeisler acknowledges seeing prior to his deposition, includes instructions to "close all sea cocks except for cockpit drains" and "flush and fill air-conditioning system with anti-freeze"[12] In his damage survey addendum, marine surveyor David Timpani set forth opinions in connection with his full investigation as follows:

> 1. It is our opinion that the damage to this vessel was caused by freeze damage to the air conditioning raw water sea strainers.
> 2. One of the sea strainers has a cracked sight glass, the other displays separation of the sight glass from the brass housing. (See pictures 1 & 2)
> 3. The seacock handle in picture 3 is in the up position indicating it is open.
> 4. Water entered the vessel through the freeze damaged sea strainers, and sank it, because the seacock was left open.
> 5. Mr. Zeisler's did not meet the standard of workmanship applicable to winterizing the vessel as indicated on his bill.
> 6. Due to Mr. Zeisler's breach of the standard of workmanship and failed to properly

---

[10] Affidavit of David Timpani at Ex. C.
[11] Exhibit 6 deposition of Dan Zeisler (emphasis added).
[12] Depo. Zeisler PP 87-88, Exhibit 7.

winterize the vessel, the craft sank causing damages as outlined in my initial report and supplement.[13]

Despite the industry standard as set forth by David Timpani and the Boat US winterizing checklist, Mr. Zeisler did not drain the air-conditioning lines nor close the sea cocks in the boat utility room but instead deployed portable heaters as a method to prevent freezing.[14] In particular, Mr. Zeisler described his use of the alternative heater method for winterization as follows:

> Q. And from your perspective what
> 13 was the purpose of the portable heater in the
> 14 utility area?
>
> 15 A. In case the electric -- or in
> 16 case something would happen to the air
> 17 conditioner, it wouldn't put out heat, it
> 18 would stop, it would keep it warm so it
> 19 wouldn't freeze up.
>
> 20 Q. When you say not freeze up,
> 21 you're referring specifically to air
> 22 conditioning lines?
>
> 23 A. Correct.

In defending his use of the heaters as distinguished from the prescribed method, Mr. Zeisler admitted his fatal error and misguided notion that the substitution would prevent freezing of the lines. [15] Particularly, Mr. Zeisler acknowledged his unfortunate misjudgment of the heater function as follows:

> Q. That is the term that you use in
> 16 your letter, correct? You say, winterization
> 17 of Roy's boat; is that right? It's actually
> 18 twice you've indicated that?

---

[13] Affidavit of David timpani at Exhibit C
[14] Zeisler depth though at P. 64
[15] Zeisler deposition PP 77-78

4

19 A. Right.

20 Q. We'll highlight that here on
21 Exhibit 6. Did the winterization that you're
22 referring to in Exhibit 6, was part of that
23 winterization putting the heaters in the
24 utility closet?

25 A. Yes

Q. So the winterization would
2 include putting the antifreeze in the engine
3 lines and providing for the heat around the
4 air conditioning; is that right?

5 A. Yes.

6 Q. And the purpose of doing that
7 was to allow the boat to survive the winter;
8 is that right?

9 A. Yes.

10 Q. And you believed that the boat
11 would survive the winter based on your past
12 experience; is that correct?

13 A. Yes.[16]

Furthermore, Mr. Zeisler admitted the sinking of the vessel directly resulted from his failure to

employ the proper standard in draining the air-conditioning hoses and closing the sea cocks as

follows:

Q. Okay. So from your
3 understanding, the reason for the sinking
4 would be a combination of this water not
5 circulating within the air conditioning
6 system due to the electric failure and the
7 stopping of the portable heater that was in

---

[16] Id., also see highlight at Ex. 6 Zeisler depo.

8 the room that allows the lines to then
9 freeze; is that true?

10 A. Correct.[17]

## II.    <u>LAW AND ARGUMENT</u>

### A.  Summary Judgment Standard

As set forth by the Northern district of Ohio, the under the Federal Rules, "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[18] A fact is "material" only if its resolution will affect the outcome of the lawsuit.[19] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion."[20]

As set forth below, defendant in this case has failed to meet an initial burden of demonstrating that no genuine issues of material fact remain with respect to any of the counts within plaintiff's complaint. To the extent the Court finds plaintiff has met his initial burden, Plaintiff has responded through its attached affidavits along with testimony and exhibits cited establishing genuine issues of material fact under each of the four counts in its complaint including negligence, breach of contract, breach of implied or express warranty and breach of implied warranty of workmanship under federal maritime in admiralty law. Particularly, the genuine issue of material fact remains whether Mr. Zeisler breached the standard of

---

[17] <u>Id</u>. at p. 80.
[18] *Kermavner v. Wyla, Inc*., 250 F.Supp.3d 325 (2017), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed. R. Civ. P. 56(c)).
[19] <u>Id</u>. citing, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)
[20] <u>Id</u>, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

workmanship and/or breached his contract in using portable heaters to winterize the air-conditioning system on Mr. Smith's boat.

**B. A genuine issue of material fact remains whether the scope of Mr. Zeisler's duties included winterizing the air-conditioning system on board the Smith vessel.**

Plaintiff's expert David Timpani succinctly sets forth the grounds for defendant's liability in stating "Mr. Zeisler's did not meet the standard of workmanship applicable to winterizing the vessel as indicated on his bill. Due to Mr. Zeisler's breach of the standard of workmanship and a failed to properly winterize the vessel, the craft sank causing damages as outlined in my initial report and supplement."[21] In referencing the "bill", Mr. Timpani refers to Mr. Zeisler's own hand written notation delivered to Mr. Smith providing the scope of work as "winterize boat".[22] In attempting to explain the written scope, Mr. Zeisler admitted writing "winterize boat" on the invoice but claimed it was a mistake, stating as follows:

> Q. I'm hearing an objection to this
> 19 term winterize. You wrote winterize boat on
> 20 Exhibit 1, didn't you?
>
> **21 A. I did write that.**
>
> 22 Q. Why did you write it on there?
>
> 23 A. Well, I was going to add engines
> 24 and I never did. And for some reason it just
> 25 slipped my mind and I never did.
>
> Q. So you think you would have more
> 2 accurately wanted to write winterize boat
> 3 engines, is that what you're saying?
>
> 4 A. Winterized engines, that's what

---

[21] Affidavit of David Timpani at Exhibit C
[22] Exhibit 1 Deposition Dan Zeisler.

> 5 I should have put down there, right, which I
> 6 didn't, I totally forgot to do that.[23]

Mr. Zeisler's self-serving disclaimer of his own invoice might have some credibility if not for the fact that he repeated the same scope description two times in his own letter to Matt Pais. Mr. Zeisler specifically stated he was providing information regarding "winterization of Roy's boat". He further stated there had not been a past issue "of any kind regarding the winterization of Roy's boat". Only upon filing of a lawsuit has Mr. Zeisler redefined his scope as attempted in his motion for summary judgment to "winterization of the engines".

By redefining his scope, Mr. Zeisler attempts to absolve himself of liability based upon the fact that the engines were not the cause of the boat submersion.[24] This effort on the part of Mr. Zeisler amounts to a shell game in which he attempts to artificially segregate his duties. The sleight-of-hand aside, Mr. Zeisler's argument cannot prevail for any reasonable juror who will see the abundant evidence indicating he understood himself to be **winterizing Mr. Smith's boat** to protect against sinking in exactly the manner that occurred in this case. In order to effectuate the full winterization, Mr. Zeisler deployed heaters in Mr. Smith's utility area upon his own initiative. Mr. Zeisler clearly assumed responsibility for the heaters and their function when he checked on December 22nd or 23rd to make "sure everything was running properly".[25] Further, in his own affidavit in support of motion for summary judgment, Mr. Zeisler takes ownership of the portable heater winterization method stating he "reminded" Roy "that he needed to turn the heaters on in November and that if he wanted me to do so he should contact me". [26]

Tragically, Mr. Zeisler's makeshift efforts in placing the heaters and later checking on their status while Roy was in Florida did not suffice to protect the vessel. Mr. Zeisler's

---

[23] Deposition Zeisler at PP 43-44 (emphasis added)
[24] Zeisler Motion for Summary Judgment Argument section A at P 12.
[25] Deposition Dan Zeisler at P 97.
[26] Affidavit Dan Zeisler at para 8.

inadequate methods and means are admittedly the cause of the boat sinking on January 11, 2014 so that a failure to allow a trier of fact to determine liability would not serve the interest of justice or judicial economy in this matter and defendant's motion should be denied.

### C. A genuine issue of material fact remains whether Dan Zeisler violated industry standards and/or breached his contract in substituting placement of portable heaters for the process of draining air-conditioning hoses and closing sea cocks in winterizing the Smith vessel.

Protestations in his motion for summary judgment aside, in his deposition Mr. Zeisler admitted he placed the heaters as part of his winterization process. This omission is fully consistent with both Mr. Zeisler's invoice and his later letter to Matt Pais.[27] In the face of abundant evidence demonstrating his liability, Zeisler falls back on Smith's alleged approval of his workmanship as if that were a pronouncement of absolution to all contractual and tort standards. However, in accordance with Plaintiff's Count III for breach of contract, a customer's acceptance of contractor's performance does not determine the work is free from defect.[28]

Smith clearly testified of his own ignorance of the standards involved in winterizing of vessel. In fact, it was Smith's own deficit in knowledge that brought about the hiring and subsequent reliance on Zeisler to perform the necessary duty. In contracting Zeisler to winterize the boat, Smith fulfilled his obligation under the policy as testified by Matt Pais.[29] Unlike Zeisler, Smith lacked the capacity to appreciate the shortcomings in Zeisler's use of the portable heater in order to compensate for the failure to drain air-conditioning lines and close sea cocks. Smith properly contracted to benefit from Zeisler's superior knowledge as evidenced by the invoice documenting the task to "winterize boat". Zeisler himself testified that he believed the

---

[27] Supra, statement of facts.
[28] <u>Seneca Valley, Inc. v. Caldwell</u> (Seventh Dist. 2004), 156 Ohio App.3d 62, 808 N.E.2d 422.
[29] Supra, statement of facts.

portable heater method is adequate in circumstances where the boat is regularly checked. [30] At the same time, Zeisler agreed that Roy Smith could not be checking his own boat while he was in Florida.[31] With all these facts in hand, Zeisler himself left for Florida immediately after Christmas thereby leaving the boat at the mercy of conditions.[32]

Having knowingly subjected Mr. Smith's boat to the perils of winter, Zeisler cannot now be heard credibly to deflect his responsibility upon his unknowing customer in the person of Mr. Smith as attempted in the motion for summary judgment. To the contrary, reasonable minds along with the interests of justice could only disregard Mr. Smith's unknowing acquiescence as any factor in bringing about the boat submersion and Mr. Zeisler must accordingly be held accountable.

### D. A genuine issue of material fact remains whether Standard Fire Insurance Company properly applied exclusionary language within its policy relating to the insured duty to winterize.

Defendant requests the court grant summary judgment because "plaintiff's insurance contract exclusion could have been applied by plaintiff to deny coverage to its insured". In setting forth this argument, defendant offers no opinion of any insurance claim professional suggesting plaintiff misapplied its own policy term. Contrary to the alleged failure to apply and exclusion, Standard Fire adjuster, Matt Pais, who is licensed in at least 15 states, testified to his appropriate means in determining the Mr. Smith complied with the policy provision by contracting for "winterization of the boat" with Mr. Zeisler.[33] Specifically, Pais' investigation determined that Smith placed Zeisler in charge of winterizing the vessel.[34] Pais' investigation

---

[30] Zeisler deposition at the 94.
[31] Id. at P 95.
[32] Zeisler at P 81.
[33] Affidavit of Mathew Raymond Pais at para. 1, 3-5; Dep. of Matt Pais at p. 56.
[34] Dep. M. Pais at p. 56.

indicated Smith relied on his mechanic, Zeisler, in the winterization process.[35] Pais summed up his conclusion in the file note after speaking with Zeisler stating as follows:

> "Dan to winterize his boat in October 2013. Invoice on file. Dan confirmed same as he has done in past. Insured is in Florida and does not have part in winterization the boat. Winterization exclusion does not apply for the loss.[36]

As set forth above, a reasonable juror could only find that Pais diligently conducted his investigation and was accurately informed by Mr. Zeisler that he took responsibility for winterizing Mr. Smith's vessel. Mr. Pais further confirmed this with and invoice and written statement from Mr. Zeisler.[37] Therefore, reasonable jurors could only determine that Mr. Pais properly followed procedures and adjusting standards in paying the claim for the lost vessel under the Smith policy.

### III. CONCLUSION

Plaintiff has far exceeded presentation of evidence beyond a scintilla to show genuine issues of material fact. As set forth above, genuine issues of material fact upon which reasonable minds can differ remain in this case and a trier of fact properly must be permitted to determine the question of liability where defendant charges his client for winterization but leaves the craft exposed to freeze sinking due to inadequate means and methods.

---

[35] Id. at P. 64.
[36] Pais Dep. at peace 72
[37] Id. at P. 85.

Respectfully submitted,


/s/Douglas J. May_____
Douglas J. May (0042681)
Travelers Staff Counsel Ohio
One Gateway Place—Suite 610
615 Elsinore Place
Cincinnati, OH 45202-1459
(513) 639-5340
(513) 639-5348—Fax
dmay@travelers.com
*Attorney for Plaintiff*


## CERTIFICATE OF SERVICE


I HEREBY CERTIFY a copy of the foregoing Motion will be circulated via the court's

ECF electronica filing system to counsel of record upon filing this  4th, day of January, 2018.


Alan R. Trenz, Esq.
10403 Harrison Avenue, Suite 400
Harrison, OH 45030


/s/Douglas J. May_____
Douglas J. May (0042681)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**AT CINCINNATI**

| | | |
|---|---|---|
| **THE STANDARD FIRE** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | **CASE NO.:** 1:15-cv-805 |
| Plaintiff | : | |
| | : | **MAGISTRATE JUDGE:** Karen Litkovitz |
| v. | : | |
| | : | **AFFIDAVIT OF DAVID TIMPANI** |
| **DAN ZEISLER,** | : | **OFFERED IN OPPOSITION TO MOTION** |
| | : | **FOR SUMMARY JUDGMENT** |
| Defendant | : | |

State of  Tennessee )

               )    ss

County of  Sumner  )

Now comes David Timpani, being duly sworn, deposes and says:

1. I am a marine surveyor certified with by the Society of Accredited Marine Surveyors

   with office at 500 Old Highway 31 E Bethpage, TN 37022;

2. A true and accurate copy of my Resume setting forth my Education and work experience

   qualifying me to offer opinions within a reasonable degree of marine surveying

   probability is attached hereto as Exhibit A;

3. In accordance with my practice as a certified marine surveyor, I surveyed a certain

   Houseboat owned by Roy  Smith with hull number HUW49030C001 believed to have

   submerged at the Four Seasons Marina on or about January 11, 2014;

4. A true and accurate copy of my Marine Survey Report dated February 3, 2104 that

   documents my inspection of the vessel is attached hereto as Exhibit B.

1

5. Following issuance of my initial survey in which I opined that repair costs to the vessel exceeded $150,000 from damage suffered in the submersion, I authored an addendum dated July 11, 2016 setting forth my opinions regarding the cause of the vessel submersion and Defendant Zeisler's breach of the standard of workmanship for winterizing by vessels as set forth in Exhibit C attached hereto;

6. Exhibit C is a true and accurate copy of my Addendum issued on or about July 11, 2016 and all opinions are stated therein within a reasonable degree of marine surveying probability;

7. On or about December 19, 2016 I authored a "Market Value" survey in which I estimated the value of the vessel at the time of sinking to be between $75,000 and $85,000 stated with a reasonable degree of marine surveying probability;

8. A true and accurate copy of my Market Value survey pertaining to the vessel hull number HUW49030C001 is attached and incorporated hereto as Exhibit D.

Further affiant sayeth naught.

Executed on this __19th__ day of December, 2017

David Timpani

On __19th__ day of December, 2017 came before me the person known to be Sterling Anthony and executed the same in my presence.

Notary Public

2

Resume'

David Anthony Timpani
Marine Surveyor
500 Old Hwy. 31B
Bethpage, Tennessee 37022

Telephone: 615-206-0370
Fax:        615-206-7262

Education:

West Iron County High School, Iron River, Michigan. Graduated June 1972.

St. Clair County Community College, Port Huron, Michigan. Associate Degree in heavy
equipment and diesel engines. Graduated December 1978

Important Courses:
        Gasoline Engine Rebuild
        Diesel Engine Rebuild
        Diesel Fuel Systems
        Heavy Duty Drive Trains
        Hydraulics
        Machine Tools
        Technical Report Writing
        Welding

Seminars Attended:
        01/17/79  Chrysler Engines by Chrysler Corp.
        02/13/79  Yanmar Diesel Engines by Mack Boring Engine Co.
        12/03/80  Stern Drive Clinic by Chrysler Marine
        12/05/80  Diesel Clinic by Chrysler Marine
        02/15/83  Westerbeke Engines & Generators by Westerbeke Corp.
        02/15/85  Westerbeke Diesel Generators by Westerbeke Corp.
        05/15/86  Michigan Wheel Propeller Sizing by Michigan Wheel
        03/26/92  Crusader Engines by Thermo-Electron Corp.
        11/05/92  Velvet Drive Transmissions by Borg Warner
        09/14/93  Engines Seminar by A.B.Y.C. (13 hours)
        11/05/93  Cobra Stern Drives by OMC Corp. (35 hours)
        03/27/95  Mathers Electronic Engine Controls by Mathers
        03/22/99  I.A.M.I. Training Seminar
        02/25/00  N.A.M.S. National Meeting & Seminar
        1994 to present S.A.M.S. National meetings and educational seminars
        1999 to present I.A.M.I. National meetings and educational seminars

CBS0028

Page 2 of 2

Work Experience:

1972 to 1976
Engineman Third Class, U.S.G.G. Maintenance and repair of all types of small craft. Earned position of Coxswain for vessels up to 50' in length. Honorable Discharge in 1976.

1976 to 1978
Mechanic for Tony's Marine Repair. Wood work, fiberglass repair, steel hull repair, painting, and mechanical repairs.

1978 to 1982
Service representative for Marysville Marine Distributors. Involved in warranty, parts sales, and inventory control.

1982 to 1987
Service and parts manager for Ocean Propeller Co. In charge of all parts, engine & generator inventory, propeller shaft straightening, warranty and claims processing. Computer experience with IBM 3600 and IBM PC.

1986 to 1993
Part time independent marine surveyor. Conducting appraisals for banks, insurance companies, and private individuals.

1987 to 1988
Service Manager for Ocean Marine Power. Sales and installation of marine generators and sail boat engines.

1988 to 1993
Parts manager for Marysville Marine Distributors, South Location. In charge of inventory control, parts sales, and dealer development.

1994 to Present
Independent marine surveyor, full time. Conducting appraisals, condition & value, and damage surveys. Clients include most major insurance companies, banks, and private individuals. Member in good standing with the American Boat and Yacht Council, Society of Accredited Marine Surveyors, and the International Association of Marine Investigators. I received Accredited Marine Surveyor status on 03/06/95. AMS number 338.

References available upon request.

CBS0029

# Timpani Marine Survey

E-Mail: dtimpani@comcast.net

Phone: 615-206-0370
Fax: 615-206-7262

500 Old Hwy, 31R
Bethpage, TN 37022

## Damage Survey

RECEIVED

APR 2 4 2017

Travelers Staff Counsel Office
Cincinnati, OH

| | |
|---|---|
| File Number: | 6511 |
| Claim Number: | HLII2238 |
| Date: | 01/29/2014 (Inspection) |
| | 02/03/2014 (Report) |
| Customer: | Travelers Insurance |
| | 300 Winsor St. |
| | Hartford, CT 06120 |

| | |
|---|---|
| In Attendance: | N/A |
| ATT: | Matthew Pais |
| Owner: | Roy Smith |
| Telephone: | (937) 603-1234 |
| Type of Vessel: | Power |
| Builder: | Hoverair Ltd. |
| Model: | Houseboat |
| Name: | MY HOLIDAY |
| Hull Number: | HUW49030C001 (Picture 003) |
| Length: | 50' |
| Hull Material: | Fiberglass |
| Registration: | Not Displayed |
| Type of Drive: | Inboard / Outboard |
| Make of Engines: | Crusader |
| Serial Number: | Not Visible |
| Horsepower: | 300 each |
| Trailer: | Not Inspected |
| Serial Number: | Not Inspected |

**Incident as Reported:**
During a telephone conversation with Mr. Smith, he stated that the marina called him and advised him that his boat was sinking.

**Comments:**
We inspected this boat on stands at Washington Marine in Cincinnati, Ohio. (Picture 001 & 002) Boarding ladder from the swim platform to the cockpit is bent. (Picture 004) Underwater running gear displays normal wear and tear and appears undamaged. (Picture

CBS0001

Page 2 of 2

005) Both rudders are bent aft several inches. (Picture 007) No breaches were found
below the water line. (Picture 008) Both clam shells for the bow thruster are damaged.
(Picture 011) Aft deck was covered in snow and frozen mud. (Picture 015) We opened
the engine hatch and found mud and water damage throughout the engine compartment.
(Picture 016, 017, 018, 019, 020, 021 & 022) Engines appear to have been pickled. Fly      *Form P*
bridge engine controls and gauges were not submerged. Water line is visible below the
steering wheel. (Picture 024) We entered the aft cabin and found everything out of place
and frozen solid. (Picture 026, 027 & 028) We moved to the forward cabin area and the
same. (Picture 031, 032 & 033) The 110 volt electrical panel is water damaged. (Picture
034 & 035) For sale sign was found hanging from one of the windows. (Picture 036)
Everything in the lower forward cabin is also water damaged. (Picture 037, 038 & 039)
We entered the amidships lower area and found all air conditioning units water damaged.
(Picture 041, 042 & 043) We inspected the air conditioning water intake sea strainers
and found one split down the side and another where the sight glass has pushed away
from the base. (Picture 050, 051, 052, & 056) Due to frozen debris, doors & access
holes, we were unable to check engine and generator sea strainers.

**Conclusion:**
This vessel sank and everything is water damaged except for the gauges and controls on
the fly bridge. Vessel sank due to freeze damage to the air conditioning sea strainers.
Other sea strainers may also have freeze damage.

**Initial Estimate: N/A**

**Surveyor's Worksheet: Repairing this vessel will far exceed policy limits of
$150,000.00.**

This survey was signed and submitted without prejudice.


David A. Timpani, AMS-SAMS
Marine Surveyor

Enclosures:    35 Pictures

CBS0002

# Timpani Marine Survey

Email: dtimpani@comcast.net

Phone: 615-206-0370                                    500 Old Hwy. 31E
Fax: 615-206-7262                                      Bethpage, TN 37022

## Damage Survey Addendum

**File Number: 6511**

**Claim Number:** HLH2238

**Date:** 07/11/16

**Comments:**

When winterizing a 50' vessel and storing it afloat, there are many systems that need to be addressed to insure the vessel will not suffer freeze damage or sink. These systems include:

1. Engines, transmissions & related plumbing.
2. Generator & related plumbing.
3. Water cooled air conditioning units & related plumbing.
4. Toilets, related pumps, lines & holding tanks.
5. Fresh water system including pumps, holding tanks, ice makers, water heater, etc.

All onboard plumbing systems that draw sea water for cooling through the bottom of the boat have seacocks, strainers, piping or hoses and pumps. All these items need to be drained to prevent freeze damage, and the sescocks need to be closed if the vessel is stored afloat.

**Conclusion:**

Based upon my experience as a marine surveyor, I pronounce opinions within a reasonable degree of marine surveying probability as follows:

1. It is our opinion that the damage to this vessel was caused by freeze damage to the air conditioning raw water sea strainers.
2. One of the sea strainers has a cracked sight glass, the other displays separation of the sight glass from the brass housing. (See pictures 1 & 2)
3. The seacock handle in picture 3 is in the up position indicating it is open.
4. Water entered the vessel through the freeze damaged sea strainers, and sank it, because the seacock was left open.

Page 2 of 8

5. Mr. Zeisler's did not meet the standard of workmanship applicable to winterizing the vessel as indicated on his bill.

6. Due to Mr. Zeisler's breach of the standard of workmanship and failed to properly winterize the vessel, the craft sank causing damages as outlined in my initial report and supplement.

**Additional Comments:**

Attached to this addendum is a copy of a two page BoatUS Winterizing Check List, downloaded from http://www.boatus.com/seaworthy/winter/winter-boat-storage-in-the-water.asp. The section labeled "Engine Room", "Below Decks", and "In The Water" apply to this vessel.

We have also attached a bill from Mr. Zeisler that was forwarded to us from Travelers stating he winterized the "boat".

David A. Timpani AMS- SAMS
Marine Surveyor

Page 3 of 8

Picture 1, cracked sight glass due to freezing.



Page 4 of 8

Picture 2, sight glass separated from brass housing.



Page 5 of 8

Picture 3, seacock in the open position.



Page 6 of 8
Page 1 of BoatUS Winterizing Checklist.

## BoatUS WINTERIZING CHECKLIST
MARINE INSURANCE PROGRAM

Boat's Name: _____  Length: _____  Model: _____

Name: _____

Address: _____

City: _____  State: _____  Zip: _____

Phone: _____  Email: _____

## ENGINE ROOM

**ENGINE(S)**

☐ Fill fuel tanks and add stabilizer to gasoline
☐ Change oil and filter
☐ Change fuel filters/separators in engine(s)
☐ Check coolant level in freshwater-cooling system and add coolant if necessary
☐ Run antifreeze through raw-water-cooling system
☐ Make sure water strainers are filled with antifreeze
☐ Fog cylinders in gasoline engines
☐ Top up battery electrolyte level and put batteries on marine charger

**INSTALLED GENERATOR**

☐ Change oil and filter
☐ Change fuel filters/separators
☐ Check coolant level in freshwater-cooling system and add coolant if necessary
☐ Run antifreeze through raw-water-cooling system
☐ Make sure water strainers are filled with antifreeze

**OTHER SYSTEMS**

☐ Flush and fill air conditioning system with antifreeze
☐ Run antifreeze through watermaker and pickle as per owner's manual

## OUTBOARDS

☐ Fill installed fuel tanks and add stabilizer
☐ Turn off fuel supply and fog while running
☐ Drain gear case and add fresh lubricant
☐ Flush engine with muffs and fresh water
☐ Store unit in lowest position
☐ Inspect/replace anodes
☐ Empty fuel from portable tanks into car tank and take them home for storage

Page 7 of 8

Page 2 of BoatUS Winterization Check List.

**BoatUS** MARINE INSURANCE PROGRAM  **WINTERIZING CHECKLIST**

## OUTDRIVES

☐ If water intake is in lower unit, flush and run antifreeze through using muffs
☐ Drain gear oil and add fresh lubricant
☐ Inspect/replace anodes

## BELOWDECKS

☐ Pump out holding tank and add antifreeze to head
☐ Drain water heater and bypass it
☐ Drain freshwater system and run antifreeze through it
☐ Run antifreeze through refrigeration, deck washdown pump, etc., per owner's manual
☐ Drain shower sump and other places where water pools
☐ Remove food
☐ Open lockers to air
☐ Take home cushions or store on their sides
☐ Take home portable electronics
☐ Close propane valves and take home portable canisters
☐ Verify bilge pump and switch operate properly
☐ Clean and dry bilges
☐ Secure all ports and hatches
☐ Turn off all circuit breakers

## IN THE WATER

☐ Close all seacocks except for cockpit drains
☐ Plug exhaust ports
☐ Check docklines and chafe guards – center boat in slip
☐ Add or adjust fenders for proper placement

## BEFORE YOU GO

☐ Tie off tiller/steering wheel
☐ Cover/shrinkwrap boat
☐ Lock cabin and leave spare key with marina manager

Page 8 of 8

Copy of Mr. Zeisler's bill to winterize the boat.

# Timpani Marine Survey

Email: dtimpani@comcast.net

Phone: 615-206-0370                                                500 Old Hwy. 31E
Fax: 615-206-7262                                                  Bethpage, TN 37022

# Market Value

**File Number: 6511**

**Claim Number:** HLH2238

**Date:** 12/19/16

**Customer:** Travelers

**Attention:** Douglas May

MIC code on the boat hull is HUW indicating it was made by Holiday Mansion International in Sicamous, BC Canada. This company was in business from 03/08/2000 to 11/24/2004. The hull number HUW49030C001 indicates this vessel was built in March of 2000 and is a 2001 model year. The original Holiday Mansion boats had a MIC code HMH and the boats were built in Salina, Kansas from 05/07/76 to 10/22/97. The Holiday Mansion International boats do not appear in any of the current published price guides.

We searched soldboats.com and found three similar vessels, all three were built in 2003 and prices range from $61,000.00 to $150,000.00. Two of the boats are diesel powered and one is gasoline powered. One of the boats was in Texas, and the others were in Florida. All three are salt water boats.

It is our opinion that Mr. Smith's boat was worth between $75,000.00 and $85,000.00 prior to sinking.

David A. Timpani AMS- SAMS
Marine Surveyor

Attachments: 3 printouts from soldboats.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
AT CINCINNATI

THE STANDARD FIRE        :
INSURANCE COMPANY,       :
                           :     **CASE NO.:** 1:15-cv-805
             Plaintiff   :
                           :     **MAGISTRATE JUDGE:** Karen Litkovitz
       v.                 :
                           :     **AFFIDAVIT OF MATTHEW PAIS**
**DAN ZEISLER,**              :     **OFFERED IN OPPOSITION TO MOTION**
                           :     **FOR SUMMARY JUDGMENT**
             Defendant   :

State of Connecticut  )
                   )     ss
County of _____ )

Now comes Matthew Raymond Pais, being duly sworn, deposes and says:

1. I am a senior technical specialist, over 18 years of age, who has been employed adjusting claims by the plaintiff for 10 years. Prior to working for the plaintiff, I worked for Progressive Insurance Company for approximately 5 years. I am a licensed adjuster in more than 15 states and handle claims nationwide for the plaintiff. I have a bachelors degree from the University of Hartford in criminal justice and business.

2. My office address is 300 Windsor St., Hartford, CT 06120.

3. In accordance with my duties as a senior technical specialist, I adjusted a boat loss claim on behalf of the insured Roy Smith identified as number HLH2238.

4. In accordance with my education, training and experience I interpreted the "winterization" exclusion contained within the Smith Marine policy to determine coverage existed for the loss on January 11, 2014.

1

5. My determination that coverage existed for the loss in which Mr. Smith's Holiday Mansion vessel sank at Four Seasons Marina was based on factors including Dan Zeisler's letter to me dated January 23, 2014 and the invoice documenting Mr. Zeisler's charge to "winterize boat".

6. All opinions offered herein are within a reasonable degree of claims adjusting probability.

7. Further affiant sayeth naught.

Executed on this 2nd day of January, 2018

Matthew Raymond Pais

On 2nd day of January, 2018 came before me the person known to be Matthew Raymond Pais and executed the same in my presence.

Notary Public

JILL DU PONT
Notary Public                            2022
My Commission Expires SEPTEMBER 30, 2012

2