## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## AT CINCINNATI

| | | |
|---|---|---|
| **THE STANDARD FIRE INSURANCE** | : | |
| **COMPANY,** | : | **CASE NO.**1:15-cv-805 |
| | : | |
| Plaintiff | : | **JUDGE SUSAN J. DLOTT** |
| | : | |
| | : | |
| | : | . |
| -vs- | : | |
| | : | |
| **DAN ZEISLER,** | : | |
| Defendant | : | |

### PLAINTIFF'S PRETRIAL BIEF

Now comes the Plaintiff, by counsel, in accordance with the Court's order issued February 20, 2018 (Doc. 83 at pp. 9-10, page ID # 1199-1200) and sets forth its pretrial memorandum as follows:

### MEMORANDUM

I. **The elements for each separate cause of action asserted in the Amended Complaint and an analysis of how the facts in the record support or tend to disprove each element;**

   A. **Count I: Negligence**

In order to establish negligence between private parties, a party must show (1) a duty owed, (2) a breach of that duty, and (3) an injury proximately resulting from that breach.[1]  An action against a contractor for breach of duty to perform services in a workmanlike manner is an action that sounds in tort even though the duty to perform in a workmanlike manner arises out of

---

[1] *Vadaj v. French*, 2017 -Ohio- 1370, 89 N.E.3d 73.

a contract.[2] Mr. Zeisler claims he only agreed to winterize the engines prior to Smith's boat sinking. This claim, however, is contrary to the invoice in which Mr. Zeisler states he winterized the boat.[3] Mr. Zeisler explains his hand written notation that he winterized Mr. Smith's boat by stating he should have written "winterize engines" but "totally forgot to do that".[4]  In addition, Mr. Zeisler wrote to Standard Fire Insurance Company's adjuster Matt Pais indicating that he was retained by Mr. Smith to winterize the boat.[5] Zeisler placed the heaters "in the manner he had learned from John Clements".[6]  He had winterized the boat for five to six years prior to the sinking.[7]  Placement of heaters around the air conditioners was part of Zeisler's winterization process.[8]  Defendant placed the heaters "in case something would happen to the air conditioner, it wouldn't put out heat, it would stop, it would keep it warm so it wouldn't freeze up."[9]

Zeisler errantly believed his placement of the heaters around the air conditioner would prevent the boat from sinking.[10]  Zeisler agrees that Smith's boat sank because of water circulating in the air conditioner.[11]  Zeisler believes placing heaters around air conditioners is only effective if the boat is being checked on.[12]  Zeisler agrees that Smith could not check on the boat while he was in Florida as he was when it sank.[13] Therefore, Mr. Zeisler's effort to redefine the scope of his work should not be well taken by the trier of fact.

---

[2] *Dawn Court Associates v. Cristia*, 115 Ohio Misc. 2d 54, 761 N.E.2d 705 (C.P. 2001).
[3] Ex. B Dep. Roy smith, Doc. 29 p. ID # 163.
[4] Depo. Dan Zeisler at p. 42, Doc. 78 p. ID 1103.
[5] Depo. Dan Zeisler at p. 77-8, Doc. 78 p. ID 1138-39; Depo Dan Zeisler Exhibit 1, Doc. 78-1 p. ID 1044; Ex. 6 Depo. Dan Zeisler, Doc. 78-6 p ID 1049.
[6]  Aff. of Dan Zeisler at Ex. 1 para. 6, **Doc.** 70-1 p. ID 878
[7] Ex. 6 Depo. Dan Zeisler, Doc. 78-6 p ID 1049.
[8]  Depo. Dan Zeisler at p. 77-8, Doc. 78 p. ID 1138-39.
[9]  Depo. Dan Zeisler at p. 64, Doc. 78 p. ID 1125.
[10] Depo. Dan Zeisler at p. 78, Doc. 78 p. ID 1139.
[11] Depo. Dan Zeisler at p. 80, Doc. 78 p. ID 1141.
[12] Depo. Dan Zeisler at p. 94, Doc. 78 p. ID 1155.
[13] Depo. Dan Zeisler at p. 94, Doc. 78 p. ID 1156.

B. **Count II: Breach of Express/Implied Warranty**

Under the implied workmanship duty, a party must perform services in a manner consistent with that "customarily done by others in the same trade, in the same community, for the same type of work".[14] The testimony of David Timpani, AMS, SAMS, establishes that the duty in winterization Mr. Smith's boat included draining the sea strainers, filling the air conditioning lines with anti-freeze and closing the seacocks.[15] Mr. Timpani further opines that because of Defendant's failure to apply the workmanlike standard in winterizing the Smith boat, water entered the hull after a freeze-thaw rupture in the sea strainers causing it to sink.[16] Mr. Timpani references outside literature produced by BoatsUS is substantiating the industry standards that include to close "all seacocks except for cockpit drains" and "flush and fill air-conditioning system with anti-freeze" in the boat winterization process.[17] Mr. Timpani concluded based on his investigation that Defendant breached the implied duty of workmanlike manner in particulars as follows:

1. It is our opinion that the damage to this vessel was caused by freeze damage to the air conditioning raw water sea strainers.
2. One of the sea strainers has a cracked sight glass, the other displays separation of the sight glass from the brass housing. (See pictures 1 & 2)
3. The seacock handle in picture 3 is in the up position indicating it is open.
4. Water entered the vessel through the freeze damaged sea strainers, and sank it, because the seacock was left open.
5. Mr. Zeisler's did not meet the standard of workmanship applicable to winterizing the vessel as indicated on his bill.
6. Due to Mr. Zeisler's breach of the standard of workmanship and failed to properly winterize the vessel, the craft sank causing damages as outlined in my initial report and supplement.[18]

---

[14] *Barton v. Ellis* 34 Ohio App.3d 251 (10th Dist. 1986); *Kishmarton v. Bailey Const. Inc*. 2000 WL 300997 (CA Ohio 8th Dist.).
[15] Doc #: 72 Filed: 01/04/18 Page: 19, PAGEID #: 906.
[16] Id.
[17] Doc #: 72 Filed: 01/04/18 Page: 24-5 PAGEID #: 911-2.
[18] Doc #: 72 Filed: 01/04/18 Page: 19-20, PAGEID #: 906-7.

C. **Breach of Contract**

To state a breach of contract claim, in Ohio and elsewhere, essentially four elements are required: (1) a binding agreement between two parties; (2) performance by the non- breaching party; (3) a failure to fulfill its obligation (without legal excuse) by the breaching party; and (4) consequent damages incurred by the non- breaching party.[19] Verbal agreements are enforceable agreements in Ohio.[20] In this case, Dan Zeisler and Roy Smith reached an agreement concerning winterization of the boat in October 2013.[21] Dan Zeisler agrees he issued a receipt for winterization work performed on the boat in October 2013.[22] Zeisler agrees Smith paid the invoice.[23] Therefore, the first two elements of the contract claim including the fact of a binding contract and performance by Mr. Smith, the nonbreaching party, are not disputed in this case. In addition, defendant would not dispute element four, that is that the Holiday Mansion boat was damaged due to its submersion in the slip at Four Seasons Marina. Therefore, the only remaining dispute within the elements of plaintiff's contract claim is whether Mr. Zeisler fulfilled his contract with Mr. Smith. On this element, plaintiff merely contests the scope of duty claiming he was only hired to "winterize the engines".[24] Since all of the evidence supports that defendant attempted to winterize the vessel to keep it from sinking, plaintiff must prevail in its contract claim.

---

[19] *Wellington Resource Group LLC v. Beck Energy Corp.*, 975 F. Supp. 2d 833 (S.D. Ohio 2013).
[20] *Union Sav. Bank v. White Family Cos., Inc.*, (2d Dist. 2009) 183 Ohio App.3d 174, 916 N.E.2d 816, 2009 -Ohio-2075.
[21] Doc #74 filed 1/26/18 at p. 3, page ID # 926.
[22] Doc #74 filed 1/26/18 at p. 4, page ID # 927.
[23] Depo. Dan Zeisler at p. 17-8, Doc. 78 p. ID 1078.
[24] Depo. Dan Zeisler at p. 22, Doc. 78 p. ID 1083.

D. **Breach of Implied warranty of Workmanship Under Federal Maritime and Admiralty Law**

The elements of the Implied Warranty of Workmanship in a Maritime Services Contract include as follows:

- The ship owner's reliance on the expertise of another party
- Entrance into a contract whereby the contractor agrees to perform services without supervision or control of the shipowner
- The improper, unsafe or incompetent execution of  such services would foreseeably render the vessel unseaworthy.
- The shipowner is exposed to liability.[25]

Mr. Smith's testimony indicates that he did no more than observe the winterization work Defendant performed on this boat over a number years and that he understood the term "winterize the boat" to mean the entire vessel.[26]  Therefore elements 1 and 2 are met under the maritime implied warranty of workmanlike service in the Smith-Zeisler agreement.  Moreover, the implications of an improper winterization are admitted by Zeisler when he testified that he placed the electric heaters to prevent freezing in the HVAC and possible sinking of the vessel.[27] Finally, the element of liability to the owner is me when Mr. Smith lost his vessel on January 11, 2014.  Therefore elements of Defendant's breach of implied warranty of workmanship in providing maritime services are met. The only remaining question is one of jurisdiction which was contested by Defendant and is briefed below.

1.  **Navigable Water Element**

---

[25] *Messina v. Ocean Repair Service Co*. (1993), 1994 A.M.C. 402.
[26] Depo. Roy Smith at p. 73-4, Doc. 29 at p. ID 150-51; Dep. Roy Smith at. p. 69, l. 13, **Doc.** 29, p. ID 146; Ex. B Dep. Roy Smith, Doc. 29, p. ID # 163.
[27] Depo. Dan Zeisler at p. 77-8, **Doc.** 78 p. ID 1138-39; Depo Dan Zeisler Exhibit 1, Doc. 78-1 p. ID 1044; Ex. 6 Depo. Dan Zeisler, **Doc.** 78-6 p ID 1049.

Plaintiff has the burden of proving that the case is within the court's admiralty jurisdiction.[28] Technically, "admiralty" is a jurisdictional term whereas "maritime" refers to the substantive law to be applied. Admiralty jurisdiction and maritime law matters arise out of injury to persons or damage to property related to (1) a vessel (2) in navigation (3) on navigable waters (4) during the course of traditional maritime activity (5) with the potential for affecting maritime commerce.[29]

"Vessel" is defined as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."[30] The "Vessel" test for subject-matter jurisdiction purposes is subjective—to be a "vessel," the object must to the reasonable observer be seen as designed to a practical degree for carrying people or things over water.[31] "In navigation" does not mean the vessel must be underway but that it must be capable of carrying out a transportation function.[32]

"Navigable waters" are waters on which there may be maritime commerce with other states or foreign countries in customary modes.[33] Once a waterway has been found to be navigable, it remains so.[34] The Coast Guard promulgates regulations defining waters of the United States as navigable or nonnavigable.[35] The regulations may be considered by a court but

---

[28] LaMontagne v. Craig, 817 F.2d 556 (9th Cir. 1987). See, generally, Schoenbaum, Hornbook on Admiralty and Maritime Law § 3.2 (4th ed. 2004). Technically, "admiralty" is a jurisdictional term whereas "maritime" refers to the substantive law to be applied. *Van Deurzen v. Yamaha Motor Corp. USA*, 276 Wis. 2d 815, 2004 WI App. 194, 688 N.W.2d 777 (Ct. App. 2004

[29] Jerome B. Grubhart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995); Sisson v. Ruby, 497 U.S. 358 (1990).

[30] 1 U.S.C. § 3.

[31] Lozman v. City of Riviera Beach, Fla., 133 S.Ct. 735 (2013) (floating home lacking rudder, steering gear and incapable of self-propulsion is not a "vessel").

[32] See Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38 (La. 1990) (reviewing relevant cases).

[33] Lykes Bros, Inc. v. United States Army Corps of Engineers, 64 F.3d 630 (11th Cir. 1995).

[34] Id. at 634.

[35] See 33 C.F.R. §§329.1 – 329.16.

are not binding.[36]  Navigable waters include waters made navigable even if not previously navigable or formerly were navigable but no longer, and not ever navigable but may become navigable by reasonable improvement.[37]  Waterways capable of commercial use are "navigable."[38]  Accordingly, the Ohio River in which Mr. Smith boat was moored, is a navigable waterway in applying Admiralty standards.

### 2.  Impacting Maritime Activity Element

"During the course of traditional maritime activity" means activities on navigable waters involving navigation and other activities traditionally undertaken by vessels.[39]  To determine whether an alleged wrong bears a significant relationship to traditional maritime activity, courts will generally consider the following factors: (1) "the function and role of the parties"; (2) "the types of vehicles and instrumentalities involved"; (3) "causation and type of injury"; (4) "traditional concepts of the role of admiralty law."[40]  Particular emphasis is placed on traditional concepts of the role of maritime law, such as the need for uniformity of laws on navigable waterways regardless of which states they flow through. Examples of traditional maritime activities include: navigation of a vessel on navigable waters [1]; storage and maintenance of a vessel at a marina on navigable waters[2] and conversion and repair of a vessel on navigable waters.[3]

Another prong of the test for determining whether a case falls within admiralty and maritime jurisdiction is whether the incident has potential to affecting maritime commerce. The inquiry does not turn on the actual effects of an incident on maritime commerce but whether the

---

[36] See 33 C.F.R. §329.3.
[37] PPL Montana, LLC v. Montana, 132 S. Ct. 1215, 182 L. Ed. 2d 77 (2012).
[38] Aqua Log, Inc. v. Lost and Abandoned Pre-Cut Logs and Rafts of Logs, 709 F.3d 1055 (11th Cir. 2013).
[39] Sisson v. Ruby, 497 U.S. 358 (1990).
[40] Cochran v. E.I. DuPont de Nemours, 933 F.2d 1533, 1538 (11th Cir. 1991). See also Lewis Charters, Inc. v. Huckins Yacht Corp., 871 F.2d 1046 (11th Cir. 1989); Bender Shipbuilding & Repair Co. v. Brasileiro, 874 F.2d 1551 (11th Cir. 1989).

general features of the type of incident involved have the potential to disrupt commercial activity.[41] Thus, a collision between pleasure boats occurring on a navigable waterway where there is seldom, if ever, commercial traffic, may satisfy this prong because it has the potential to block navigation or create a hazard disrupting commercial activity.[42] Similarly, a fire on a noncommercial vessel at a marina located on a navigable waterway where there are few, if any, docked vessels may satisfy this prong because the general feature of the incident, a fire, could potentially disrupt commercial activity by spreading to nearby commercial vessels or by making the marina inaccessible.[43] The Supreme Court has determined that admiralty jurisdiction covers repairs to a vessel whether made while afloat, while in dock, or while "hauled up by ways upon land".[44] In accordance with the above precedent, Mr. Zeisler was engaged in maritime activity when he agreed to winterize Mr. Smith vessel. Maritime jurisdiction is equitable to be determined by the court. Admiralty applies pure comparative negligence and preamps Ohio's qualify comparative negligence statute.[45]

In opposition, defendant has cited *Hall v. Robinson* as precedent for rejecting admiralty jurisdiction. [46]However, in Hall court noticed there "was no proof on the question of whether the case was subject to maritime law". Nonetheless, the court summarily rejected maritime jurisdiction based merely on the fact that the Jet Ski involved in the wrongful death was involved in "pleasure boating".[47] The District Court in *Hall* offered no rationale for its rejection of

---

[41] Sisson v. Ruby, 497 U.S. 358 (1990).

[42] Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982).

[43] Sisson v. Ruby, 497 U.S. 358 (1990). See also Jerome B. Grubhart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995) (vessel in navigation on navigable water that collides with underwater structure had potential to disrupt maritime commerce because it "could lead to restrictions on the navigational use of the waterway during required repairs")

[44] *North Pacific Steamship  Company v. Hall Bros. Marine Railway & Shipping Company*, 249 US 119, 128, 39 Sup Ct. 221, 63 L. Ed. 510 (1918).

[45] *Miller v. American Dredging Company* 510 US 443, 1994 AMC 913 (1994).

[46] 490 5F supplement 23 (1980).

[47] *Hall v. Robinson,* 490 5F supplement 23 (1980).

admiralty law and is contrary to establish precedent that pleasure boating with potential impact on commercial maritime activity is covered under admiralty jurisdiction as set forth above.

II.   **Explanation of the economic-loss rule in Ohio and how it applies to
        each separate cause of action asserted in the Amended Complaint;**

"Economic loss" refers to damages that are solely monetary in nature as opposed to damages involving physical to person and property.[48] In this case, Plaintiff seeks damages solely related to damages to Mr. Smith's vessel. In particular, Plaintiff is seeking the fair market value of the vessel at the time it sank. Plaintiff is not seeking any economic losses that may have resulted to its insured as a result of his pleasure boat sinking. Accordingly, the economic loss doctrine has no bearing on any of Plaintiff's claims herein.  Further, the economic loss doctrine applies only to parties "in the absence of *privity*".[49]  Mr. Smith and Defendant are in *privity* in this matter.   The economic loss doctrine may apply to physical damage in a products liability action where physical damage is limited to the product, however, that provision does not apply here where Defendant is not alleged to be a "manufacturer".[50]  In addition the warranty of workmanlike manner in performing a maritime services contract is undisturbed by the economic loss rule recognized in products liability claims.[51]  Accordingly, the economic loss doctrine as defined in Ohio is not a factor in this matter.

III.   **Other legal arguments relevant to a potential Federal Rule of Civil
         Procedure 50 motion at trial.**

Federal Rule of Civil Procedure 50(a)(1) provides in pertinent part as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no
> legally sufficient evidentiary basis for a reasonable jury to find for that party on

---

[48] Proof of Negligence in Repair of Vessel, 138 Am. Jur. Poof of Facts 3d 377 section 8.
[49] *Fed Inc. Co. v. Fredericks* 29 N.E.3d 313, 2015 WL 849049 (Second Dist. 2015).
[50] Ohio R.C. 2307.71 (A)(2).
[51] Messina, supra. 1994 A.M.C. at 409, citing *Fairmont Ship Corp. v. Chevron International Oil Co., Inc*. 1975 AMC 261, 511 F.2d 1252, 1258 (2 Cir.) cert. den., 423 U.S. 838, 1975 AMC 2159 (1975).

that issue, the court may determine the issue against that party may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.[52]

Plaintiff anticipates moving for directed verdict at the close of Defendant's case with respect to the defenses that Mr. Zeisler's scope of work did not include protecting the air conditioner from freezing and/or his defense that he did not breach the standard of care. Plaintiff maintains the only remaining issue of fact at the close of Defendant's case will be that of damages.

Respectfully submitted,

/s/Douglas J. May
Douglas J. May (0042681)
Travelers Staff Counsel Ohio
One Gateway Place—Suite 610
615 Elsinore Place
Cincinnati, OH 45202-1459
(513) 639-5340
(513) 639-5348—Fax
dmay@travelers.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a copy of the foregoing Motion will be circulated via the court's ECF electronica filing system to counsel of record upon filing this 15th day of March, 2018.

Alan R. Trenz, Esq.
10403 Harrison Avenue, Suite 400
Harrison, OH 45030

/s/Douglas J. May
Douglas J. May (0042681)

---

[52] FRCP 50(a)(1).